IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  06-cv-00036-WYD-MJW

MICHAEL J. WARD,

      Plaintiff,

v.

THOMAS SIEBEL;
THE SIEBEL LIVING TRUST;
JUSTIN DOOLEY
FIRST VIRTUAL MANAGEMENT, INC.

      Defendants.

---

**ORDER**

---

I.    INTRODUCTION AND BACKGROUND

    THIS MATTER is before the Court on Defendants' Renewed Motion for

Summary Judgment, filed November 17, 2006 (docket #40).  On December 11, 2006,

Plaintiff Michael J. Ward filed a motion pursuant to F.R.C.P. 56(f) to postpone ruling on

Defendants' renewed motion for summary judgment as it pertains to the first, second,

and third claims for relief in the Amended Complaint.  I granted the motion to postpone,

and permitted Plaintiff additional time to respond to the renewed motion for summary

judgment, as it pertains to the first, second, and third claims for relief.  The renewed

motion for summary judgment is now fully briefed.  I have considered all responses and

replies on record, and am ready to rule.

    This is a dispute concerning recovery of a commission on the sale of certain real

property located in Mountain Village, Colorado.  In his Amended Complaint, Plaintiff brings five claims for relief for breach of contract, unjust enrichment, procuring cause, breach of implied duty of good faith and fair dealing, and false representation.

Defendant Thomas Siebel is the Trustee of Defendant Siebel Living Trust (the "Trust").  The Trust is the owner of certain real property known as 123 Victoria Drive, Mountain Village, Colorado 81435 (the "Property.").  On May 6, 2004, the Trust entered into an Exclusive Right-To-Sell Listing Contract with Alpine Lodging & Real Estate, and Plaintiff Michael J. Ward for the sale of the Property (the "Ward Listing Contract").  The Ward Listing Contract had a listing period of April 22, 2004 through December 31, 2004.  On December 12, 2004, and again on March 28, 2005, the parties executed agreements to extend the listing period through April 30, 2005.  The terms of the Ward Listing Contract provide that Defendant Siebel would pay Plaintiff a commission of 6% of the gross sales price of the Property if the Property sold within the listing period.  In addition, the Ward Listing Contract contained a "hold-over" provision which provided that Plaintiff would be entitled to the 6% commission in the event of:

> (3) any sale of the property within 180 calendar days subsequent to the expiration of the Listing Period (Holdover Period) to any one with whom the Broker negotiated and whose name was submitted, in writing, to Seller by Broker during the Listing Period (including any extensions thereof); provided, however, that Seller shall owe no brokerage commission to Brokerage Firm under this subsection (3) if a commission is earned by another licensed real estate brokerage firm acting pursuant to an Exclusive Right-To-Sell Listing Contract . . . entered into during the Holdover Period.

Ward Listing Contract at p. 5.

In March 2005, during the listing period, Gene T. Sykes and Tracey M. Sykes looked at the Property.  The parties dispute whether James F. Lucarelli, a real estate broker with Real Estate Affiliates of Telluride, LLC, showed the Property to the Sykes, or whether Glenn Lester, a broker who attended the showing on behalf of Plaintiff, primarily conducted the showing.  The parties also dispute whether the Sykes expressed interest in the Property at that time.  However, the parties agree that on April 18, 2005, Plaintiff sent an e-mail to Defendant Siebel stating "I also want to let you know the house was shown to Gene Sykes . . . who wants to see the house one more time before making an offer.  The earliest time he can make it back to Telluride is Memorial Day weekend.  I feel confident that he will make an offer and I have been pushing for him to make an offer contingent on his return but he keeps saying he wants to see it again."

On April 20, 2005, as the deadline for expiration of the Ward Listing Contract approached, Plaintiff sent Defendant Siebel a letter asking him to extend the Ward Listing Contract, or allow Plaintiff the opportunity to co-list the Property with a new broker, or exclude a list of potential buyers that have already viewed the Property "from any future listing agreement for a period of 90 days from the date of the new listing." Siebel did not respond to the letter.  Plaintiff then sent a fax to Defendant Siebel on April 27, 2005, in which he once again requested that Defendant Siebel either extend the Ward Listing Contract or exclude a list of named individuals, including the Sykes, "from any future listings with another broker for a period of 90 days."  On April 28, 2007, Plaintiff sent an e-mail to Defendant Justin Dooley, President of Defendant First

Virtual Management, Inc. ("FVM"), a corporation which exists to manage the Trust, stating "If [Siebel] is going to list the property with another Broker could you please add to my list of names to be excluded Len and Katherine Conway and Austin Beutner thanks for your help."  Dooley responded to the e-mail the same day stating "If FVM or [Siebel] signs a listing agreement with another broker, we will list the names you have identified in the fax and in the below e-mail."

Plaintiff admits that Defendant Siebel did not agree to an additional extension of the Ward Listing Contract, but contends that his request to exclude a list of potential buyers from any future listing agreements for a period of 90 days was accepted by Defendant Siebel through his agent, Justin Dooley and FVM.  Defendants dispute this and state that while Defendant Siebel directed Justin Dooley to communicate with Plaintiff on the Trust's behalf, he did not authorize Dooley to modify or enter into a listing contract or to commit the Trust to any agreement with Plaintiff.  Plaintiff admits that Defendant Siebel did not directly and specifically communicate to him that Dooley had authority to act on behalf of the Trust, but contends that in reliance on Dooley's statement that his list of names would be excluded, he continued to market the Property through May and early June 2005.

On May 18, 2005, Plaintiff left a voice mail message for Defendant Siebel stating that he had arranged for the Sykes to revisit the Property over the 2005 Memorial Day weekend.  Defendant Siebel did not respond to the voice mail.  The Sykes did revisit the Property over the Memorial Day weekend, and during the showing they requested permission to return to the Property the next day for a picnic.  On May 24, 2005,

Plaintiff submitted to Mr. Dooley an Exclusive Agency Listing Contract, dated May 23, 2005, which Defendant Siebel did not execute.  On June 2, 2005, the Trust entered into an Exclusive Right-To-Sell Listing Contract at a reduced price, with Telluride Properties, LLC and Stephen Cieciuch (the "Cieciuch Listing Contract").  The Cieciuch Listing Contract was dated April 22, 2005, had a listing period of May 1, 2005 through May 1, 2006, and did not exclude any potential purchasers.  However, on June 6, 2006, Defendant Dooley sent Plaintiff an e-mail stating "Tom has just signed with a new listing agent.  We have passed on the names you previously gave us - do you want to add this couple to that list?"  The next day, Plaintiff responded to the e-mail stating that "I received a call from the new Listing agent who told me that there were no names passed on to him to exclude from his contract. . . ."  Thirty-six minutes later, an administrative assistant with FVM sent an e-mail to Cieciuch stating "Dear Steve, Following are 90-day exclusions to the 123 Victoria Drive, Telluride listing," and listed the names set forth in Plaintiff's April 27 fax correspondence.  Cieciuch refused to exclude the names because they were not set forth in his Listing Contract.

The Sykes made an offer to purchase the Property on June 20, 2005. Defendant Siebel did not accept the June 20, 2005 offer, and submitted a counterproposal, which was not accepted by Sykes.  On July 31, 2005 the Sykes submitted a second contract to buy the Property, which was accepted by Defendant Siebel on August 3, 2005.  Both Telluride Properties, LLC and Real Estate Affiliates of Telluride earned commissions on the sale of the Property from the Trust to the Sykes.

II.    ANALYSIS

A.    Summary Judgment Standard

Pursuant to rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the court must] 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'" *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Id.* (quotation omitted).

B.    Breach of Contract

Plaintiff's claim for breach of contract is based on allegations that prior to the expiration of the Ward Listing Contract, Plaintiff and Defendants Siebel and the Siebel Living Trust entered into a subsequent contract whereby Plaintiff agreed to continue to market the property to several identified prospects, including the Sykes, and Defendant Siebel agreed to exclude those prospects for the first 90 days of any subsequent listing contract signed with another broker, and to pay Ward a 6% commission upon closing of a sale of the property to any of the identified prospects. Am. Comp. at ¶¶ 60. Plaintiff

refers to this contract as the "Exclusion Contract."  Plaintiff contends that Defendants

breached the Exclusion Contract by failing to exclude Sykes and other named

prospects from the Cieciuch Listing Contract, refusing to allow Plaintiff the opportunity

to market the property once the Cieciuch Listing Contract was signed, and failing to pay

Plaintiff a commission upon the sale of the property to Sykes.  Am. Comp. at ¶ 63.

      Defendants contend that the undisputed facts demonstrate that no Exclusion

Contract was ever entered into by Defendant Siebel or the Trust, and further assert that

Defendant Dooley had neither actual nor apparent authority to enter such a contract

with Plaintiff on behalf of the Trust.  Defendants also note that even if the Trust entered

an agreement with Plaintiff to exclude Sykes from the Cieciuch Listing Contract for 90

days after expiration of the Ward Listing Contract, that period had expired before Sykes

made an offer that was ultimately accepted.

      I find that there are material facts in dispute concerning whether Defendants

Dooley and FVM had actual or apparent authority to enter into a binding agreement

with Plaintiff regarding the 90-day exclusions.  The agency relationship is the result of

consent by one person to another that the other shall act on his behalf and subject to

his control, and consent by the other to so act.  *City & County of Denver v. Fey Concert

Co.*, 960 P.2d 657, 660 (Colo. 1998).  Generally, the existence of an agency

relationship is a question of fact.  *City of Aurora ex rel. Utility Enterprises v. Colorado

State Engineer, et al.,* 105 P.3d 595 (Colo. 2005).  Apparent authority of an agent, as

opposed to actual or express authority, is established by operation of law where words

or conduct by the principal "causes a person to believe that the principal "consents to

have an act done on his behalf by a person purporting to act for him." *In re Marriage of Robbins*, 8 P.3d 625, 628 (Colo. App. 2000).  Apparent authority is recognized to protect third parties who rely upon their belief that an agency relationship exists between the apparent principal and agent, and the existence of apparent authority is generally a question of fact. *Id.*  Here, there is evidence that Defendant Dooley was the President of FVM, a corporation owned by the Trust that existed to solely to administer the Trust's assets, and that Siebel specifically directed Plaintiff to run all communications regarding the Property through Defendant Dooley.  Under these circumstances the issue of Dooley's actual apparent authority is an issue for a jury to decide.

Similarly, the existence of the so-called "Exclusion Contract," and whether there was a meeting of the minds concerning the terms of that contract, are also issues for the jury.  Generally, where parties to a contract fail to agree to sufficiently definite terms, "there is no meeting of the minds and no valid contract exists." *Winston Financial Group, Inc. v. Fults Management*, *Inc.*, 872 P.2d 1356, 1358 (Colo. App. 1994).  However, "when the existence of a contract is in issue, and the evidence is conflicting or admits of more than one inference, it is for the jury to decide whether a contract in fact exists." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo. 1989).  Here, viewing the evidence in the light most favorable to Plaintiff, there is evidence that Defendant Dooley, acting as an agent for Defendant Siebel and the Trust, agreed to exclude a list of potential buyers, including Sykes, from a future listing agreement for 90 days from the date of the new listing.  Therefore, I find that

Defendants are not entitled to summary judgment on Plaintiff's breach of contract claim.

    C.    <u>Unjust Enrichment</u>

I now turn to Plaintiff's claim for unjust enrichment.  Defendants contend that the existence of an express contract between Plaintiff and Defendant in the form of the Ward Listing Contract precludes Plaintiff's claim for unjust enrichment based on Defendants' failure to pay Plaintiff a commission on the sale of the Property. Defendants cite *P.J. Berry Company, Inc. v. Denver American Family Lodge West, Inc.*, 663 P.2d 264, 266 (Colo. App. 1983), which stand for the proposition that "[i]f there is an express contract, unjust enrichment is not an issue and the broker's entitlement to a commission is determined by the terms of the contract."  However, I agree with Plaintiff that he is entitled to pursue his unjust enrichment claim as an alternative theory in the event his breach of contract claim fails.  *See Interbank Investments, LLC v. Eagle River Water and Sanitation Dist.*, 77 P.3d 814, 816 (Colo. Appl. 2003); *Backus v. Apishapa Land and Cattle Co.*, 615 P.2d 42, 61-62 (Colo. App. 1980).  Therefore, Defendants are not entitled to summary judgment on Plaintiff's unjust enrichment claim at this time.

    D.    <u>Procuring Cause</u>

Under the common law doctrine of procuring cause, a broker who procures a person ready, willing, and able to purchase upon terms and conditions imposed by the owner is entitled to commission, even though owner and purchaser later conduct further negotiations which result in change of terms.  *Telluride Real Estate Co. v. Penthouse Affiliates*, 996 P.2d 151, 153 (Colo. App. 1999) (citing *Brewer v. Williams*, 147 Colo. 146, 362 P.2d 1033 (1961)).  "The determination whether a broker is the

procuring cause rests on whether the broker set in motion a chain of event which, without break in continuity, resulted in a sale.  When the buyer and seller involved in a real estate contract intentionally exclude a broker from negotiations, they are precluded as a matter of law from defending on the basis that the broker was not the procuring cause." *Telluride*, 996 P.2d at 153.

According to Defendants, the undisputed facts show that Plaintiff's two showings of the Property to Sykes in March and over the Memorial Day weekend, did not result in any active interest in the part of Sykes and Plaintiff was not the procuring cause of the sale.  Plaintiff disputes Defendants characterization of Sykes interest in the Property following the two showings.  As Plaintiff notes, Sykes first learned that the Property was for sale through Plaintiff's listing, and Plaintiff arranged for Sykes to view the Property on multiple occasions over several months.  In addition, Plaintiff provided information to Sykes concerning maintenance expenses associated with the Property, which may have influenced the amount of Sykes July 31 offer.  Viewing the evidence in the light most favorable to Plaintiff, I find that there are factual disputes concerning whether Plaintiff set into motion an unbroken chain of events that resulted in the sale of the Property.  Moreover, despite Defendants' contention to the contrary, "[a]pplicaiton of the procuring cause doctrine does not depend on the existence of a written agreement." *Id.* at 153.  Therefore, summary judgment is not appropriate on this claim.

E.    Breach of Implied Duty of Good Faith and Fair Dealing

I now turn to Plaintiff's claim for breach of the implied duty of good faith and fair dealing.  Colorado law recognizes that every contract contains an implied duty of good

faith and fair dealing, which is generally evoked to effectuate the "intentions of the

parties or to honor their reasonable expectations" when one party has discretionary

authority to determine certain terms of the contract.  *Amoco Oil v. Ervin*, 908 P.2d 493,

498 (Colo. 1995).  According to the Amended Complaint, this claim is based on the so-

called "holdover" provision in the Ward Listing Contract which provided that Plaintiff

would be entitled to the 6% commission in the event of:

> (3) any sale of the property within 180 calendar days
> subsequent to the expiration of the Listing Period (Holdover
> Period) to any one with whom the Broker negotiated and
> whose name was submitted, in writing, to Seller by Broker
> during the Listing Period (including any extensions thereof);
> provided, however, that Seller shall owe no brokerage
> commission to Brokerage Firm under this subsection (3) if a
> commission is earned by another licensed real estate
> brokerage firm acting pursuant to an Exclusive Right-To-Sell
> Listing Contract . . . entered into during the Holdover Period.

According to Plaintiff, this provision gave Defendant Siebel and the Trust discretion

over the terms under which Plaintiff would be entitled to a commission upon sale of the

Property to a previously identified prospect during the holdover period.  Plaintiff

contends that he had a reasonable expectation that Defendants would keep him

informed about whether they signed a subsequent listing agreement, and would protect

his rights to a commission on a sale to a buyer to whom he was actively marketing the

Property at the time a subsequent listing agreement was signed by excluding that buyer

from the subsequent listing agreement.  Defendants contend that to the extent this

claim for relief is based on the holdover provision, it must fail because the Property was

not sold "to anyone with whom the Broker negotiated . . . during the listing period," and

because Plaintiff cannot claim alleged breaches of the duty of good faith based on events that occurred after the Ward Listing Contract expired on April 30, 2005.

Whether a party acted in good faith is a question of fact, as is the issue of whether Plaintiff "negotiated" with Sykes during the listing period, pursuant to the holdover provision.  *See Amoco*, 908 P.2d at 499.  Therefore, summary judgment is not appropriate with respect to this claim.

F.   <u>False Representation</u>

Finally, I address Defendants' contention that they are entitled to summary judgment on Plaintiff's claim for false representation.  In his Amended Complaint, Plaintiff contends that Defendants Dooley and FVM falsely represented to Plaintiff that they had authority to bind the Trust, falsely represented to Plaintiff that Defendant Siebel and the Trust agreed to exclude Sykes and others from any subsequent listing with another broker, and in reliance on this representation, Plaintiff continued to work towards procuring a contract for sale for the Property to Sykes.

"To establish fraud, a plaintiff must show that the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and that the reliance resulted in damage to the plaintiff."  *Coors v. Security Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).  Defendants contend that Plaintiff has not shown "reliance" on the alleged misrepresentation because the undisputed facts demonstrate that Plaintiff did nothing after the Memorial Day showing that would entitle him to a commission.  While

-12-

Plaintiff does not respond to this argument, I nevertheless find that Plaintiff has demonstrated that there are disputed issues of fact with respect to this claim.  Viewing the facts in the light most favorable to Plaintiff, issues of fact remain concerning whether Defendants' conduct, particularly Defendant Dooley's April 28, 2005 e-mail, caused Plaintiff to believe that Defendant Siebel and the Trust would exclude the Sykes from a subsequent listing agreement, whether Plaintiff continued to market the property to Sykes after the expiration of the Ward Listing Agreement based on that belief, and whether Plaintiff suffered damages as a result of these continued efforts.  Therefore, Defendants' motion for summary judgment as to Plaintiff's claim for false representation will be denied.

III.    CONCLUSION

In conclusion, for the reasons set forth herein, it is hereby

ORDERED Defendants' Renewed Motion for Summary Judgment, filed November 17, 2006 (docket #40) is **DENIED**.

Dated:  July 23, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge