IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No. 06-cv-00036-WYD-MJW

MICHAEL J. WARD,

    Plaintiff,

v.

THOMAS SIEBEL;
THE SIEBEL LIVING TRUST;
JUSTIN DOOLEY
FIRST VIRTUAL MANAGEMENT, INC.

    Defendants.

**ORDER**

I.     INTRODUCTION

THIS MATTER is before the Court on Defendant The Siebel Living Trust's (the "Trust") Motion for Attorney's Fees and Costs, filed April 12, 2010 [ECF No. 180] in which the Trust seeks $327,801.94 in attorney fees and $16,911.69 in costs incurred in this matter. Plaintiff filed a response on June 1, 2010, and Defendant filed a reply on June 28, 2010. A hearing on the motion took place on September 29, 2010. Upon consideration of the motion, the response and reply, and the arguments of counsel, I find that the motion should be denied.

II.     BACKGROUND

By was of background, I note that Plaintiff initiated this action on January 10, 2006, seeking recovery of a real estate commission he claimed he was owed under a

listing agreement with the Trust.  In his Amended Complaint, Plaintiff brought five claims for relief for breach of contract, unjust enrichment, procuring cause, breach of implied duty of good faith and fair dealing and deceit.

Plaintiff is a real estate broker in Colorado.  The Trust is the owner of certain real property known as 123 Victoria Drive, Mountain Village, Colorado 81435 (the "Property.").  On May 6, 2004, the Trust entered into an Exclusive Right-To-Sell Listing Contract with Plaintiff (the "Listing Contract").  Including extensions agreed to by the parties, the term of the Listing Contract was from April 22, 2004 to April 30, 2005.  The Listing Contract provides that if the Property is sold within the listing period, Plaintiff is entitled to a 6% commission of the gross sales price of the Property.  In addition, the Listing Contract contains a "hold-over" provision which provided that Plaintiff would be entitled to the 6% commission in the event of:

> (3) any sale of the property within 180 calendar days subsequent to the expiration of the Listing Period (Holdover Period) to any one with whom the Broker negotiated and <u>whose name was submitted, in writing, to Seller by Broker during the Listing Period</u> (including any extensions thereof); provided, however, that Seller shall owe no brokerage commission to Brokerage Firm under this subsection (3) if a commission is earned by another licensed real estate brokerage firm acting pursuant to an Exclusive Right-To-Sell Listing Contract . . . entered into during the Holdover Period.

(Emphasis added).

In April, 2005, as the deadline for expiration of the Ward Listing Contract approached, Plaintiff sent Defendant Thomas Siebel, the Trustee of the Trust, a letter and fax asking him to extend the Ward Listing Contract, or allow Plaintiff the opportunity to co-list the Property with a new broker, or exclude a list of potential buyers that have

-2-

already viewed the Property "from any future listing agreement for a period of 90 days from the date of the new listing." Defendant Siebel did not respond. On April 28, 2007, Plaintiff sent an e-mail to Defendant Justin Dooley, President of Defendant First Virtual Management, Inc. ("FVM"), a corporation which exists to manage the Trust, requesting that additional names be added to the list previously faxed to Defendant Siebel in the event Defendant Siebel decided to list the Property with another broker. Defendant Dooley responded to the e-mail the same day stating "If FVM or [Siebel] signs a listing agreement with another broker, we will list the names you have identified in the fax and in the below e-mail."

Plaintiff contended that his request to exclude a list of potential buyers from any future listing agreements for a period of 90 days was accepted by Defendant Siebel through his agent, Defendants Dooley and FVM, and that he continued to market the Property through May and early June 2005 in reliance on Dooley's statement.

On June 2, 2005, the Trust entered into an Exclusive Right-To-Sell Listing Contract at a reduced price, with Telluride Properties, LLC and Stephen Cieciuch, which had a listing period of May 1, 2005 through May 1, 2006, and did not exclude any potential purchasers. After Plaintiff informed Dooley that he had received a call from the new listing agent who informed him that "there were no names passed on to him to exclude from his contract. . . ," an administrative assistant with FVM sent an e-mail to Cieciuch stating "Dear Steve, Following are 90-day exclusions to the 123 Victoria Drive, Telluride listing," and listed the names set forth in Plaintiff's April 27 fax correspondence. However, Cieciuch refused to exclude the names because they were

not set forth in his Listing Contract.

The Property was eventually sold to a buyer with whom Plaintiff had negotiated and asked to be excluded pursuant to the hold-over provision in the Listing Agreement. The Trust paid a commission to Mr. Cieciuch under the terms of his agreement and, therefore, did not pay a commission to Plaintiff under the terms of the hold-over provision.

Plaintiff brought claims against the Trust for breach of contract, procuring cause, breach of good faith and fair dealing, and fraud. Plaintiff also brought claims for fraud against Defendant Siebel, Defendant Dooley, and Defendant FVM. The matter proceeded to trial. At the close of evidence, I denied the Trust's motion for judgment as a matter of law, and all of the claims, excluding the unjust enrichment claim, were submitted to the jury.

The jury returned a verdict in favor of the Trust as to Plaintiff's claims for breach of contract, procuring cause, and deceit based on fraud, but found in Plaintiff's favor as to his claim for breach of implied duty of good faith and fair dealing, and awarded damages in the amount of $135,625.00. The jury also found in favor of Plaintiff on his claim for deceit against a second defendant, Justin Dooley, an awarded damages in the amount of $232,500.00.[1] Post-trial, the Trust filed a renewed motion for judgment as a matter of law as to Plaintiff's claim for breach of implied duty of good faith and fair dealing, which I denied. In addition, I reduced Plaintiff's damage to zero after Plaintiff

---

[1] The jury found in favor of Defendants, Thomas Siebel and FVM on Plaintiff's for deceit based on fraud.

settled with Defendant Dooley for $232,500.00, the full amount of the commission.[2]

The Trust subsequently appealed the denial of its motions for judgment as a matter of law. On appeal, the Tenth Circuit found that the Trust was entitled to judgment as a matter of law as to Plaintiff's claim for breach of implied duty of good faith and fair dealing, and it reversed and remanded the case with instructions to enter judgment in favor of the Trust. An Amended Judgment in favor of the Trust on Plaintiff's claim for breach of the covenant of good faith and fair dealing entered March 30, 2010.

III. ANALYSIS

In the instant motion, the Trust seeks an award of attorney's fees and costs pursuant to the attorney's fee provision in the parties' Listing Contract that authorizes an award of costs and reasonable attorney fees to the prevailing party in litigation concerning the agreement. Plaintiff opposes the motion and asserts that (1) the Trust was not the "prevailing party," and (2) that even if I determine that an award is appropriate, that award should be substantially less that the amount sought.

    A.    <u>Whether the Trust is the "prevailing party" for the purposes of an attorney fee and cost award</u>:

Under Colorado law, a prevailing party may recover attorney fees if authorized by statute or contract. *Wheeler v. T.L. Roofing, Inc.*, 74 P.3d 499, 503 (Colo. App. 2003). Here, the Trust's claim for attorney fees and costs is based on a provision in the listing agreement with provides that "[i]n case of arbitration or litigation concerning this contract, costs and reasonable attorney fees shall be awarded to the prevailing party."

---

[2]Following trial, the parties jointly moved to dismiss the unjust enrichment claim.

The listing agreement does not define the term "prevailing party."

Determination of which party succeeded or prevailed under a contractual fee-shifting provision is within the trial court's discretion. *Dennis I. Spencer Contractor, Inc. v. City of Aurora*, 884 P.2d 326, 328 n. 6 (Colo. 1994) (*en banc*); *Bedard v. Martin,* 100 P.3d 584, 593 (Colo. App. 2004); *Brock v. Weidner,* 93 P.3d 576, 579 (Colo. App. 2004). Colorado courts have found that a 'prevailing party' is one who prevails on a significant issue in the litigation and derives some of the benefits it seeks. *Archer v. Farmer Bros. Co.*, 90 P.3d 228, 230 (Colo. 2004). Generally, "where a claim exists for a violation of a contractual obligation, the party in whose favor the decision or verdict on liability is rendered is the prevailing party for purposes of awarding attorney fees." *City of Aurora*, 884 P.2d at 332 (Colo. 1994). However, "[w]hen a case involves may claims, some of which are successful and some of which are not, it is left to the sole discretion of the trial court to determine which party, if any, is the prevailing party." *Archer*, 90 P.3d at 231.

When each party prevails in part, the trial court generally must select one party as the overall winner for purposes of a fee-shifting agreement. *See Lawry v. Palm*, 192 P.3d 550, 569-70 (Colo. App. 2008); *Brock,* 93 P.3d at 579. "Where either party could arguable be considered the 'prevailing party,' the trial court is in the best position to evaluate the relative strengths and weaknesses of each party's claims, the significance of each party's successes in the context of the overall litigation, and the time devoted to each claim." *Archer*, 90 P.3d at 231. However, the trial court may rule that neither party prevailed and award no fees. *Lawry,* 192 P.3d at 569-70; *Remote Switch Sys., Inc. v.*

*Delangis,* 126 P.3d 269, 274 (Colo. App. 2005).

The Trust asserts that it is clearly the prevailing party in this case because it prevailed on all of the claims asserted again it, including all claims arising under the listing agreement. Plaintiff contends that in the context of the overall litigation, the Trust is not the prevailing party. Plaintiff notes that he succeeded in recovering payment of the $232,500 commission to which he believed he was entitled under the Listing Agreement. According to the Trust, the fact that Plaintiff succeeded on his misrepresentation claim against Defendant Dooley is irrelevant to its motion because it is not seeking fees incurred in connection with the claim against Defendant Dooley. The Trust contends that in cases involving multiple parties, the decision whether to award fees and costs should be specific to each defendant.

In this case, analysis of which party is the 'prevailing party' is more complex than in a typical breach of contract case. Arguably, both parties prevailed on significant issues in the litigation and obtained the relief sought in the litigation. Although Plaintiff did not prevail against the Trust on any of his claims, including his claim for breach of the duty of good faith and fair dealing, Plaintiff did prevail against Defendant Dooley on his claim that Dooley misrepresented his authority to enter agreements on behalf of the Trust. In connection with this claim, Plaintiff successfully obtained the exact amount of damages he claimed he was owed under the Listing Agreement.

While it might appropriate in some cases to separably consider who prevailed as between the plaintiff and each individual defendant, I find that analysis would not be useful in this case. Here, Defendant Dooley was President of FVM, a company owned

by the Trust that manages the Trust's assets, and an agent of the Trust. Throughout this litigation Plaintiff maintained that Defendant Dooley either had authority to modify the Listing Agreement, in which case the Trust would be bound by that modification, or he misrepresented his authority to modify the Listing Agreement, in which case Dooley would be liable for that misrepresentation. Defendants were jointly represented at all stages of the litigation, pursued a joint defense, and conducted themselves as a single entity. None of the Defendants raised any arguments individually. While the Trust contends that the decision whether to award fees should be specific to each Defendant, it seeks to recoup attorneys fees and costs that cover the entire litigation. Indeed, the Trust asserts that it is entitled to do so because all of the claims in this case are interrelated and are part of "litigation concerning the [listing agreement]" such that a blanket award is appropriate. The Trust contends it is not seeking fees incurred in defense of Defendant Dooley, however it has only reduced its fee request by 1.4 hours of time it contends was related solely in the defense of Defendant Dooley.

    I find that in this case that the Defendants, and by extension the claims against them, are so interrelated that it would not be appropriate to parse out a prevailing party as to each individual claim asserted against each individual Defendant. I find that in the context of the overall litigation, the fact that Plaintiff prevailed on his claim against Defendant Dooley is significant. While the Trust ultimately prevailed on its claims, Plaintiff also successfully prevailed on one of two alternative theories brought against an agent of the Trust, and was successful in recovering the entire amount of the commission he sought under his contract with the Trust. Under these circumstances, I

find that neither the Trust nor the Plaintiff is the prevailing party in this case. *Lawry,* 192 P.3d at 569-70; *Remote Switch Sys., Inc.* 126 P.3d at 274.

Because I have determined that the Trust is not the "prevailing party" in this case, the Trust cannot recover fees and costs.

For the reasons set forth herein, it is hereby

ORDERED that The Siebel Living Trust's (the "Trust") Motion for Attorney's Fees and Costs, filed April 12, 2010 [ECF No. 180] is **DENIED**.

Dated: October 8, 2010

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge