IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  06-cv-00036-WYD-MJW

MICHAEL J. WARD,

      Plaintiff,

v.

THOMAS SIEBEL;
THE SIEBEL LIVING TRUST;
JUSTIN DOOLEY
FIRST VIRTUAL MANAGEMENT, INC.

      Defendants.

---

**ORDER**

---

I.     INTRODUCTION AND BACKGROUND

THIS MATTER is before the Court on the Mandate of the Tenth Circuit, filed

December 23, 2011, [#213] and the Judgment of the Tenth Circuit, filed December 1,

2011 [#212].

Following a hearing on September 29, 2010, I issued an denying The Siebel

Living Trust's (the "Trust") Motion for Attorney's Fees and Costs, filed April 12, 2010

[ECF No. 180] in which it sought $327,801.94 in attorney fees and in costs.  In an Order

dated October 8, 2010 [ECF No. 194], I determined that the Trust was not the

"prevailing party" in this case and, therefore, was not entitled to recover fees and costs

pursuant to a fee-shifting provision in the parties' Listing Contract.[1]  Because I

---

[1]The factual and procedural background of this case is set forth in detail in Part II
of the October 8, 2010 Order [ECF No. 194], and is incorporated herein.

concluded that the Trust was not the prevailing party, I did not determine whether the attorneys' fees and costs requested by the Trust are reasonable.  The Trust appealed my Order, and the Tenth Circuit reversed and remanded the case for further proceedings after concluding that:

> [U]nder Colorado law, 'prevailing party' in the fee-shifting provision at issue means the party that prevails as between the parties to that contract, not in the context of the litigation as a whole.  Ward did not prevail against the Trust on any of his claims, and the Trust did prevail by successfully defending against all claims brought against it by Ward.  The Trust is the prevailing party as between it and Ward.

Pursuant to the Tenth Circuit's Judgment, the Trust is entitled to recover fees and costs pursuant to the Listing Contract.  Therefore, I will now address whether the attorneys' fees and costs sought by the Trust are reasonable.

## II.    ANALYSIS

The Trust was represented by two law firms during the course of this litigation. From the inception of the case in November 2005 through pretrial, discovery and the briefing of two summary judgment motions, the Trust was represented by Joseph A. Cope of Franscona, Joiner, Goodman and Greenstein, P.C. ("FJGG").  Mr. Cope billed a total of 260.8 hours at a rate of $350.00 per hour for a total of $90,790.00 in fees.[2] The Trust seeks to recover a total of $92,748.25 in fees for the services rendered by FJGG, which includes fees incurred by paralegals and law clerks, and excludes 1.4 hours of time billed by Mr. Cope during the transition of the case to trial counsel.

---

[2] The Trust has excluded 1.4 hours of time billed by Mr. Cope during the transition of the case to attorneys at Cooley.  Thus, the Trust seeks recovery of fees for 259.4 hours of time incurred by Mr. Cope in this matter.

Beginning in June 2007, the Trust was represented by attorneys at Cooley Godward Kronish LLP ("Cooley").  Cooley remained counsel of record for the Trust through trial, post trial, and the Trust's subsequent appeal to the Tenth Circuit.  The majority of the hours incurred by Cooley were billed by partner Jim Nesland at a rate of $465 per hour and associate Jeff Smith at rates ranging from $265 per hour to $410 per hour.  After excluding seven and one-half hours related to transition of the case from FJGG to Cooley, and three hours that Cooley contends is related solely to the representation of Defendant Dooley, the Trust seeks to recover fees for 353.3 hours incurred by Mr. Smith and 115 hours incurred by Mr. Nesland.  In addition, Cooley partner John Dwyer expended 45.7 hours related to the appeal of this case to the Tenth Circuit.  Mr. Dwyer billed his time at a rate of $760 per hour, and incurred a total of $34,732.00 in fees.  The Trust seeks to recover $212,127.00 in fees for services rendered by Cooley, which includes the time billed by Mr. Smith, Mr. Nesland, Mr. Dwyer, and various other associates and paralegals.  Finally, the Trust anticipates it will incur an additional $5,935.00 in additional attorney's fees in connection with this fee application.  The Trust seeks a grand total of $310,810.25 in attorney's fees $16,991.69 in costs.

Plaintiff concedes that the *hours expended* by counsel for the Trust from the inception of this matter through trial were reasonable.  In addition, Plaintiff concedes that Mr. Cope's $350 hourly rate was reasonable and that Mr. Smith's $265 hourly rate was reasonable.  However, as discussed below, Plaintiff believes that the attorneys fees incurred through trial should be apportioned between the various Defendants and

claims, that the hourly rates charged by Mr. Nesland and Mr. Dwyer be reduced, and that fees incurred for the Trust's appeal be reduced.

      A.    <u>Whether Apportionment is Appropriate</u>

According to Plaintiff, the Trust's attorneys' fees should be apportioned through trial to include only representation of the Trust on the one claim clearly covered by the fee-shifting provision (the claim for violation of the duty of good faith and fair dealing).

Under Colorado law, "[w]hen there are multiple parties and an award of attorney fees is entered against only one of the parties, the trial court, to the extent practical, should apportion the fees so that only those fees incurred with regard to that party are awarded." *Newport Pacific Capital Co., Inc. v. Waste*, 878 P.2d 136, 140 (Colo. App. 1994).

Plaintiff notes that throughout the litigation, the Trust's attorneys jointly represented all four defendants, only one of whom (the Trust) was a beneficiary of the listing agreement's fee-shifting provision.  In addition, the Trust's attorneys defended against all five separate claims - including tort claims - only one of which arose directly from the listing agreement.  Plaintiff contends that since all five claims sought the same relief against all four defendants, it is reasonable to presume the Trust's counsel devoted substantially similar attention to each of the claims and each of the Defendants. According to Plaintiff, a reasonable apportionment of the Trust's fees through trial is between one-fifth and one-quarter of the total fees, resulting in an award between $40,000.00 and $50,000.00.

The Trust asserts that apportionment is not appropriate because all of the claims

asserted are interrelated.  The Trust appears to concede that it would not be

appropriate for it to seek fees expended on behalf of Defendants Dooley and FVM, who

are not parties to the listing agreement, but contends that it has already excluded these

fees.

I am not persuaded by Plaintiff's argument regarding apportionment.  First, it is

clear that all of the five claims asserted in this case arise out of the same events and

are interrelated.  In addition, the fee-shifting provision in the Listing Agreement applies

to any "litigation concerning this contract" without regard to whether the individual claims

asserted sound in contract or tort.  All of the claims asserted in this case were

alternative theories for recovering the listing fee provided for in the Listing Agreement.

Except for the misrepresentation claim, all of the claims in this case were asserted

against the Trust and its trustee, Defendant Siebel, both of whom are covered by the

Listing Agreement.  While the misrepresentation claim was brought against all

Defendants, the Trust states that it has excluded from its fee request the time incurred

representing Defendant Dooley, agent and President of Defendant First Virtual

Management, Inc.  In conclusion, I find that it would not be practical or appropriate to

apportion the attorneys fees incurred by counsel for the Trust in this case.

B.    Whether the Fees Sought are Reasonable

"The most useful starting point for determining the amount of a reasonable fee is

the number of hours reasonably expended on the litigation multiplied by a reasonable

hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "This calculation

provides an objective basis on which to make an initial estimate of the value of a

lawyer's services." *Id.*  In other words, to determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee. *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotations omitted).  "The lodestar calculation is the product of the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" *Id.* (quotation omitted).  "A district court should approach this reasonableness inquiry 'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients.'" *Id.* (quoting *Ramos v. Lamm*, 713 F.2d 545, 555 (10th Cir. 1983)).

As discussed above, Plaintiff concedes that the hours expended by counsel for the Trust from the inception of this matter through trial were reasonable.  In addition, Plaintiff concedes that the rates at which Mr. Cope rendered services was reasonable, and that Mr. Smith's $265 hourly rate was reasonable.  However, Plaintiff asserts that Mr. Nesland's rate of $465 per hour exceeds prevailing market rates and should be reduced to $350 per hour, the rate charged by Mr. Cope.  As to the Trust's appeal to the Tenth Circuit, Plaintiff challenges both the number of hours expended and the hourly rates charged.

### 1.   Reasonable Hourly Rate

As to the hourly rate, the Tenth Circuit indicates that "the court must look to 'what the evidence shows the market commands for civil rights or analogous litigation.'" *Burch v. La Petite Academy, Inc.*, 2001 WL 589461 at *2 (quoting *Case v. Unified School Dist.*, 157 F.3d 1243 (10th Cir. 1998)).  The "local market rate" is usually the state or city in

which counsel practices. *Ellis v. Univ. of Kansas Medical Center*, 163 F.3d 1186, 1203 (10th Cir. 1998) (looking at "the prevailing market rates in the relevant community"- Kansas City, Kansas); *Case*, 157 F.3d at 1256 (looking at fees charged by lawyers in the area in which the litigation occurs). The burden is on the party seeking fees to provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Case*, 157 F.3d at 1255-56.

a.    Mr. Nesland's Rate

First, Plaintiff objects to Mr. Nesland's hourly rates of $465 in 2007 and $540 in 2009, as excessive in the Denver market. According to an affidavit submitted by Mr. Nesland in connection with the Trust's motion, his hourly rates were the standard hourly rates for his services on Colorado litigation matters in 2007 and 2009. I find that Mr. Nesland is an experienced attorney with 40 years of legal experience. However, the Trust has not submitted any evidence that Mr. Nesland's rates were the "prevailing market rates" in the Denver area for similar matters by lawyers of comparable skill and experience in 2007 and 2009. In the absence of adequate evidence of prevailing market rates for attorney fees, a district court may, in its discretion "use other relevant factors, including its own knowledge, to establish the rate." *Id*. at 1257. Here, the Trust has failed to meet its burden of establishing the "prevailing market rate." Therefore, in the absence of other evidence, I find that Mr. Nesland's skill, experience and reputation are analogous to Mr. Cope, an attorney of 34 years experience, who was counsel for the Trust from at the inception of this case. As the parties concede that Mr. Cope's

hourly rate of $350 was reasonable through 2007, I find that an hourly rate of $350 per hour in 2007 is reasonable as to Mr. Nesland.[3]

### b.    Mr. Dwyer's Rate

Plaintiff also requests that Mr. Dwyer's hourly rate be reduced from $760 per hour to no more than $350 per hour.  Mr. Dwyer is an experienced attorney with 22 years of legal experience, and is a partner in Cooley's Palo Alto, California office. According to the affidavit submitted by Mr. Dwyer, he has a longstanding relationship with Defendant Siebel on unrelated matters, and he assumed management of this case following the retirement of Mr. Nesland in June, 2009.  However, his hourly rate of $760 per hour undoubtedly exceeds the prevailing market rates in the Denver for similar matters, particularly in a relatively straightforward breach of contract matter such as this. Again, as the Trust has not submitted any evidence on prevailing market rates for attorneys with comparable skill and experience, I find that a reasonable rate for Mr. Dwyer in this case is $400 per hour.

### c.    Mr. Smith's Rate

Finally, Plaintiff requests that Mr. Smith's rate be reduced from $410 per hour to no more that $300 per hour.  While Mr. Smith initially billed at $265 per hour in 2007, his hourly rate was raised to $395 in 2008, and $410 in 2009.  Determining a reasonable hourly rate is particularly difficult as to Mr. Smith, because the Trust has not  submitted any information to indicate his level of skill and experience, other than to state that his

---

[3]Mr. Nesland billed the majority of his time in this matter, a total of 109 hours, in 2007.  He billed an additional 6 hours of time in 2009.

hourly rates were the "standard hourly rates charged for Mr. Smith's services on

Colorado litigation matters."  It appears that Mr. Smith was an associate attorney during

most or all of 2007 and 2008, although Mr. Dwyer's affidavit describes Mr. Smith as

special counsel in 2009.  Again, as the Trust has not submitted any evidence on

prevailing market rates for attorneys with skill and experience comparable to Mr.

Smith's, I find that a reasonable hourly rate for Mr. Smith in 2008 and 2009 is $300 per

hour.

          2.     Hours Expended on the Appeal

          In determining the reasonableness of the hours expended on a particular matter,

I must consider several factors, including: (1) whether the amount of time spent on a

particular task appears reasonable in light of the complexity of the case, the strategies

pursued, and the responses necessitated by an opponent's maneuvering; (2) whether

the amount of time spent is reasonable in relation to counsel's experience; and (3)

whether the billing entries are sufficiently detailed, showing how much time was allotted

to specific task.  *See Ramos v. Lamm*, 713 F.2d 546, 553-54 (10th Cir. 1983), rev'd in

part on other grounds, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,

483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987).

          Once the court has adequate time records before it, "it must then ensure that the

winning attorneys have exercised 'billing judgment.'"  *Case*, 157 F.3d at 1250 (quoting

*Ramos,* 713 F.2d at 553).  "Billing judgment consists of winnowing the hours actually

expended down to the hours reasonably expended."  *Id.*  "Hours that an attorney would

not properly bill to his or her client cannot reasonably be billed to the adverse party,

making certain time presumptively unreasonable." *Id.* (citing *Ramos*, 713 F.2d at 553-54) (giving as an example time spent doing background research)); *Hensley*, 461 U.S. at 434, 437 (counsel are expected to exercise their "billing judgment", "mak[ing] a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary"). In other words, the district court should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (quotation omitted).

"After examining the specific tasks and whether they are properly chargeable, the district court should look at the hours expended on each task to determine if they are reasonable." *Id.* "The *Ramos* court suggested that among the factors to be considered were (1) whether the tasks being billed 'would normally be billed to a paying client,' (2) the number of hours spent on each task, (3) 'the complexity of the case,' (4) 'the number of reasonable strategies pursued,' (5) 'the responses necessitated by the maneuvering of the other side,' and (6) 'potential duplication of services' by multiple lawyers. *Roberts*, 160 F.3d at 1281 (quoting *Ramos*, 761 F.2d at 554). "In this analysis, [the court should] ask what hours a reasonable attorney would have incurred and billed in the marketplace under similar circumstances." *Id.*

As discussed above, the Trust expended a total of 193.4 hours pursuing its successful appeal to the Tenth Circuit, and seeks to recover $95,091.00 in attorney fees. I have already determined a reasonable hourly rate for Cooley counsel in connection with this matter, and I find those hourly rates are reasonable with respect to counsel's work on the appeal. Therefore, I will turn to whether the number of hours

incurred in connection with the appeal were "reasonably expended."

The only issue on appeal was whether the trial court erred in denying the Trust's request for judgment as a matter of law on Plaintiff's claim for breach of the implied duty of good faith and fair dealing.  There were no complex or novel issues of fact.  The entire appeal was based on whether one sentence in the listing agreement's holdover provision included an implied duty of good faith and fair dealing under the Colorado Supreme Court's decision in *Amoco Oil Co. v. Ervin*, 909 P.2d 493 (Colo. 1995). Therefore, I find that the 193.4 hours incurred in connection with the appeal is patently excessive in light of the complexity of the issue on appeal and counsel's experience.

Upon review of the billing records submitted by the Trust, I find that counsel for the Trust expended 74 hours in preparation its opening brief on appeal, which was less than 25 pages, at least 33 hours on its reply brief, which was less than 23 pages, and a staggering 58 hours in preparation for a fifteen minute oral argument before the Tenth Circuit Court of Appeals.[4]  Of the remaining 28.4 hours, approximately 20 were incurred in connection with Plaintiff's cross-appeal for pre-judgment interest, and the remaining hours were incurred drafting the Notice of Appeal, reviewing the appellate rules, participating in a mandatory mediation session, scheduling and other related tasks. In addition, I find that of the total hours expended on the appeal, Mr. Smith and other associates billed for approximately three-fourths of the total work and Mr. Dwyer and

---

[4]Mr. Dwyer spent 35.15 hours preparing for and attending the oral argument. This includes 12.5 hours billed the day of the oral argument, and travel from California to Denver.  At a rate of $760 per hour, he incurred $26,714 in attorney fees.  The remaining 22.4 hours was incurred by various associates, primarily Mr. Smith.

Mr. Nesland billed for the remaining one-fourth.[5]

Upon consideration of the number of hours spent on various tasks related to the appeal, the relatively straightforward nature of the appeal, the experience of counsel, and the potential duplication of services, I find that number of hours billed was unreasonable and must be reduced.  I will reduce the number hours expended on the opening brief from 74 hours to 20 hours; the number of hours expended on the reply brief from 33 to 12; the number of hours expended preparing for and attending oral argument from 58 to 16; and the number of hours expended in connection with the cross-appeal from 20 to 12.  I find that these reductions reflect the hours a reasonable attorney would have incurred and billed under similar circumstances.

Therefore, the number of total hours expended on the appeal are reduced from 193.4 to 68.4.  I will attribute three-fourths of these hours, approximately 51.3 hours, to Mr. Smith at a rate of $300 per hour for a total of $15,390.00; and I will attribute the remaining one-fourth, 17.1 hours, to Mr. Dwyer at a rate of $400 per hour for a total of $6,840.00.  This reduces the total amount of attorneys' fees billed in connection with the appeal from $95,091.00 to $22,230.00.

3.     The Trust's Fee Application

As to the Trust's application of its fee application, it seeks a total of $5,935.00, which anticipates a total of 10 hours of billed time at a blended rate of $593.5 per hour. I will assume that 10 hours is a reasonable number of hours expended on this task,

---

[5]Mr. Smith and other associates billed approximately 141.7 hours; Mr. Nesland billed a total of 6 hours in connection with the appeal for reviewing and revising the opening brief, and Mr. Dwyer billed a total of 45.7 hours for a total of 193.4 hours.

reduce the blended rate to $300 per hour, and award $3,000 in connection with the fee application.

4.    <u>Summary of Total Fee Reduction</u>

In summary, the hourly rate billed by Mr. Nesland will be reduced to a reasonable rate of $350 per hour in 2007, as discussed above.  Mr. Nesland billed a total of 109 hours of work in 2007.  Therefore, the Trust is entitled to recover a total of $38,150.00 in connection with Mr. Nesland's services in 2007 - a reduction of $12,535.00.  The hourly rate for Mr. Smith in 2008 and 2009 will be reduced to a reasonable rate of $300 per hour.  Mr. Smith billed a total of 49.3 hours in 2008 on matters unrelated to the appeal. Therefore, the Trust is entitled to recover a total of $14,790.00 in connection with Mr. Smith's services in 2008 - a reduction of $4,683.50.  Finally, I will reduce the total amount billed in connection with the appeal to $22,230.00 - for a grand total reduction of $72,861.00.

Thus, the total of attorneys' fees that the Trust is entitled to collect for services billed by the Cooley law firm will be reduced from $212,127.00 to $125,047.50, which includes $3,000.00 for the preparation of the fee application.  The Trust is entitled to collect $92,748.25 in attorneys' fees for services rendered by FJGG.  The grand total that the Trust is entitled to collect for attorneys' fees is $217,795.75.

5.    <u>Out of Pocket Expenses</u>

The Trust has requested out-of-pocket expenses which are not awardable as costs as attorney fees in the amount of $16,991.69.  The Trust seeks costs under the provision in the listing agreement that provides:  "[i]n case of arbitration or litigation

-13-

concerning this contract, <u>costs</u> and reasonable attorney fees shall be awarded to the <u>prevailing party</u>."  The listing agreement does not define the term "costs."

The Trust has already filed a Bill of Costs for taxable costs under Fed. R. Civ. P. § 54(d) and 28 U.S.C. § 1920.  However, the Trust asserts that, as the "prevailing party," it is also entitled to recover its nontaxable costs "so long as they are reasonable, non-overhead costs" normally billed to the firm's clients.  Plaintiff concedes that the Trust is entitled to recover costs if it is deemed the prevailing party, but objects to several items including $2,898.14 for Westlaw legal research, $939.12 in airfare, hotel, meal, parking and taxi costs incurred to prepare two non-party witnesses in Telluride $3,122.28 in hotel, meal, parking and taxi costs incurred so that counsel for the Trust could maintain a workroom in Denver during trial, and an unspecified $1,134.42 in "witness reimbursement" costs.

I find that the Westlaw legal research costs, which were incurred over a three-year period, are reasonable.  I also agree with the Trust, and the cost for the workroom during trial was reasonable in light of the fact that it allowed the Trust to avoid charging $1,095.00 daily in attorney travel time.  In addition, I agree it was reasonable for the Trust to travel to Telluride so as to prepare its non-party trial witnesses in person.

As to the $1,134.42 sought for "witness reimbursement," Plaintiff complains that these costs are for non-party witness Cieciuch, who appeared at trial pursuant to a subpoena served by Plaintiff and was reimbursed by Plaintiff for all required witness, mileage and lodging fees.  The Trust does not address these arguments in its response, and offers no further information on what these "witness fees" were, why they were

incurred, or how they were necessary.  Therefore, I find that these costs are not recoverable.

III.     CONCLUSION

For the reasons set forth herein, it is hereby

ORDERED that The Siebel Living Trust's (the "Trust") Motion for Attorney's Fees and Costs, filed April 12, 2010 [ECF No. 180] is **GRANTED**.  The Trust is awarded attorney fees in the total amount of $217,795.75, and costs in the amount of $15,857.27 for a total award of $233,653.02.

Dated:  June 15, 2012

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge